*277 Report of Committee. — -'Seat Retained by Mr. Westbiíook.
In Assembly, February 3, 1852.
Mr. Sheldon, from' the committee :on privileges and elections, 'to which was referred the petition of Job G\ Elmore, claiming the seat occupied by Jacob Westbrook, Jr., as member of the Assembly from the county of Ulster, reported, in writing, as follows,’to wit:
REPORT OF THE COMMITTEE ON PRIVILEGES AND" ELECTIONS, ON THE Petition of Job G. Elmore, Claiming the Seat Held by Jacob Westbrook, Jr.
Mr. Sheldon, from, the committee on privileges and elections, to' which was referred the claim of Job G. Elmore to the seat in the Assembly, held by Jacob Westbrook Jr., reports Job. G. Elmore and the sitting member, Jacob Westbrook, Jr., appeared before the committee and introduced evidence, but finally agreed upon the following facts:
By the canvass of'the board of county canvassers of the county of Ulster, Mr. Westbrook, was declared duly elected member of Assembly in and for the second Assembly district in said county by a majority of eighteen votes over Mr. Elmore; that. Mi. Westbrook had allowed to him in said canvass a majority of one hundred and sixty-nine votes over Mr. Elmore in the town of Rosendale in said Assembly district; that at the town meeting in the said town of Rosendale, held in 1851, three inspectors of elections were chosen for said town ; that two of said inspectors within ten days after their election took-the usual constitutional oath of office before a justice of the peace, and the other inspector took the like oath before a justice of the peace on the morning of the day of holding the general election in November last. The inspectors then proceeded to organize a board by appointing a chairman, and then conducted the election during the day; but the1 chairman of the board neglected to, administer the oath of office to the other inspectors, and neither of the inspectors administered an oath to the chairman as required by sec. 2, art 1, title 4 of the Revised Statutes.
This section provides that “ the inspectors shall appoint one of their number chairman of the board, who shall administer to the other inspectors the oath of office as prescribed by the Constitution,-and the same oath shall then be administered to the chairman by one of the other inspectors.”
It is claimed by Mr. Elmore that this neglect of the inspectors *278 renders the election void in the town of Rosendale, and that the vote of that town should he rejected.
The case presents two points:
1st. "Was the oath taken by the inspectors valid?
2d. If the oath of inspectors was not valid, can the .election be held good.
Upon examination of the first point the committee is of opinion that the oath taken by the inspectors being before a justice of the peace, was wholly unauthorized by law, and consequently of no binding force whatever. A justice of the peace has no jurisdiction to administer an oath of this character.
Where an oath of office is required to be taken before a specified officer, it is made a special exception in the general authority given certain officers to administer oaths. See vol. II, Revised Statutes, p. 383.
The second point in this case is morefimportant, but in the opinion of your committee is relieved of all difficulty by applying to it a well settled principle of law. It is, that the acts of officers defacto, while within the limits of their official duties, as far as third persons and the public are concerned, are valid. This doctrine is clearly held in judicial decisions reported in 7 John. Rep., p. 549; 9 John. Rep., p. 135, and other cases too numerous to be cited.- The inspectors of the town of Rosendale were properly elected and faithfully 'performed their duties as inspectors, except neglecting to take the official oath; shall the public suffer by this neglect ?
It is claimed by the contestant that no legal rule or even legislative enactment can dispense with the necessity of taking this oath, as the twelfth article of the Constitution requires that all executive and judicial officers (except such inferior officers as by law may be exempt) shall before they enter upon the duties of their office take an official oath, the form of which is incorporated into the Constitution. , .
It is believed that inspectors of élection are not judicial officers, within -the meaning of this article. See 8 Wen. Rep., 467; 11 John. Re])., 113, and authorities there cited.
It is known that a variety of opinions exists as to the effect which irregularities in the proceedings of boards of inspectors should have upon the validity of elections. Boards of county canvassers and other tribunals, are frequently found giving opposite decisions. It is to be regretted that there are so few general rules established by *279 which to be governed ; but the undersigned of your committee would hesitate long before aiding to establish a precedent, which if followed would frequently disfranchise large numbers of electors. They there fore concur in offering for your consideration the following resolution :
Resolved, That Job G\ Elmore is not duly elected member of Assembly, from the second Assembly district in the county of Ulster.
A. SHELDON.
IT. B. BULL.
LIEEYEY KEYES.
A. E. EIOHMOND.
Assembly Documents, 1852, No. 28.
Adoption of Kepoet.
Mr. Speaker put the question whether the House would agree to said resolution, and it was determined in the affirmative.
Assembly Journal, 1852, page 191.